IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cv-02938-STA-tmp |
| | ) | |
| STEPHANIE EDMOND, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## ORDER ON THIRD MOTION FOR ORDER TO SHOW CAUSE
_____

On June 27, 2016, after a hearing on June 1, 2016, the Court issued an order granting the

third motion of the United States for an order requiring Defendants Stephanie Edmond and Tax

Factory Enterprise, Inc., and Kevin Williams to show cause why they should not be held in civil

contempt for violating prior orders of the Court. (ECF No. 64). An order of civil contempt was

entered against Defendants Edmond and Tax Factory and against Williams as an officer of the

Tax Factory and as a person "in active concert or participation" with Defendants who had actual

notice of the Court's prior orders.[1] (*Id.*) The prior orders found to be violated were a permanent

injunction granted on April 17, 2015, (ECF No. 24), a second injunction entered after a hearing

---

[1] Rule 65(d)(2) provides as follows:

> (2) Persons Bound. The order binds only the following who receive actual notice
> of it by personal service or otherwise: (A) the parties; (B) the parties' officers,
> agents, servants, employees, and attorneys; and (C) other persons who are in
> active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

on January 15, 2016,  (ECF Nos. 39, 40), and the order of April 4, 2016, requiring an accounting and disgorgement of all fees collected since January 15, 2016.[2]  (ECF No. 51.)

In the April 4, 2016, order, the Court concluded by clear and convincing evidence that Defendants were in civil contempt of the permanent injunction and that Defendants Edmond and the Tax Factory and its successor, the Tax Firm, were in civil contempt of the second injunction. (*Id.*)  The Court, *inter alia*, enjoined Defendants, including their successor the Tax Firm and Kevin Williams, as well as any agents, servants, employees independent contractors, and all persons in active concern or participation with them from preparing federal tax returns; instructed Defendant Edmond to provide actual notice of the order to Williams and all independent contractors or employees of the Tax Firm;  ordered Defendants to provide to the United States a statement of all tax returns prepared since January 15, 2016, and the fee that was charged for the preparation of each return; and ordered Defendants and the successor Tax Firm and Williams to disgorge all fees collected since January 15, 2016, and send those fees to the United States Treasury within fourteen days of the entry of the order.  (*Id.* at pp. 10 – 12.) Defendants and Williams were warned that "[f]ailure to comply with this order or the prior injunctions issued in this matter may result in further sanctions, including but not limited, to incarceration to coerce compliance and/or compensate the United States for the damage caused by the contemptuous conduct."  (*Id.* at p. 12.)

On May 13, 2016, the United States filed a third motion for an order to show cause, contending that Defendants and Williams had not disgorged all fees collected since January 15,

---

[2]  Defendants were in contempt of the permanent injunction, the second injunction, and the order of April 4, 2016, while Williams and the Tax Firm were in contempt of the second injunction and the order of April 4, 2016.

2016, as required by the order of April 4, 2016. (ECF No. 54.) Instead, according to the United States, although total fees collected during the relevant time period exceeded $260,000 and bank statements provided by Defendants and Williams showed that on May 18, 2016, they had at least $82,270 in their bank accounts, "[b]y March 31, the bank account had been reduced by almost $20,000, including a $6,000 withdrawal made on the day of the hearing." (*Id.*at pp. 1-2.) Defendants and Williams had paid only $5,038 toward the amount ordered by the Court.

In response to an order requiring further briefing as to whether there were lesser sanctions than coercive incarceration that would be effective to secure compliance with the injunction and, if not, what amount should be paid to the United States to purge the contempt to avoid incarceration (ECF No. 58), the United States stated that it could not provide a specific dollar purge amount. Instead, the United States asked that Defendants and Williams be required to: (1) pay the full amount of funds under their control, including assets belonging to the business or purchased with funds from the business that can be sold; (2) produce a full and complete accounting to expose their prior hidden activities; and (3) provide a plan to sell the assets purchased with the funds that are subject to disgorgement. (ECF No. 59.) The United States asked that Edmond and Williams both be incarcerated until such time as they comply with the requirements listed above. (*Id.* at pp. 2 – 3.)

In response, Defendant Edmond continued to place the blame of non-payment and expenditures from the bank accounts on Williams and contended that Williams is the proper person to account for and repay the fees collected on behalf of the Tax Firm. She also stated that she has no money in her bank account and does not have money to pay her mortgage, utilities, or phone bill. (ECF No. 62.)

In its order of June 27, 2016, the Court found that (1) the permanent injunction entered on April 17, 2015, *inter alia*, prohibited Defendants Edmond and the Tax Factory, as well as their "agents, servants, employees independent contractors, . . . and all persons in active concert or participation with them," from engaging in conduct that would interfere with tax administration, including (but not limited to) preparing false returns, claiming improper deductions or credits, or otherwise engaging in conduct that could result in tax penalties; [3] (2) as president of the Tax Factory, Williams was an agent or person in active concert with that entity;[4] (3) Williams failed to comply with the terms of the permanent injunction;[5] (4) Defendants Edmond and the Tax Factory and their successor the Tax Firm and its owner, Kevin Williams, had already been found in contempt of the Court's prior orders and had been ordered to disgorge all fees collected since January 15, 2016;[6] (5) Williams had actual notice of the Court's order of April 4, 2016, which required disgorgement of all fees collected since January 15, 2016, by April 18, 2016;[7] (6) Defendants Edmond and the Tax Factory and Williams had not complied with the portion of the order requiring them to disgorge all fees collected since January 15, 2016;[8] (7) Williams made purchases with funds that were subject to the disgorgement order, and Edmond knew of these

---

[3] (Order 6/27/2016, Finding No. 5, ECF No. 64 (citing Order 4/17/2015, ECF No. 24.))

[4] (*Id.* at Finding No. 6.)

[5] (*Id.* at Finding No. 7.)

[6] (*Id.* at Finding No. 8 (citing Order 4/4/2016, Conclusions Nos. 8, 9, ECF No. 51.))

[7] (*Id.* at Finding No. 9.)

[8] (*Id.* at Finding No. 10.)

purchases;[9] and (8) Edmond and Williams had not properly accounted for all the funds that were received as fees since January 15, 2016, and had not provided sufficient records to the United States to allow it to trace those funds.[10]

The Court then concluded by clear and convincing evidence[11] that Defendants and Williams had violated the order of April 4, 2016, which was definite and specific in requiring Defendants, the successor Tax Firm, and Williams[12] to account for and disgorge all fees collected since January 15, 2016, and send those fees to the United States Treasury within fourteen days of the entry of the order and were in contempt of that order.[13]  The Court also found that, while Edmond had made some showing, through her own testimony, that she could not comply with the April 4, 2016, order, she had not made "this showing categorically and in detail."  Williams made no such showing.[14]

---

[9]  (*Id.* at Finding Nos. 12 - 14.)

[10]  (*Id.* at Finding No. 15.)

[11]  *See Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (stating that the plaintiffs "ha[ve] the burden of establishing by clear and convincing evidence that the [defendants] 'violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.' ") (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).

[12]  Williams, although not a party to the action, is bound by the order of April 4, 2016, by its express terms and by Federal Rule of Civil Procedure 65(d)(2) which states that a parties' officer who has received actual notice of an injunction is bound by that injunction.  (Order 6/27/2016, Conclusion No. 4, ECF No. 64.)

[13]  (*Id.* at Conclusions Nos. 1 – 2, 5 (citing Order 4/4/2016, pp. 10 – 12, ECF No. 51.))

[14]  (*Id.* at Conclusion No. 6.)  Once the United States has met its burden of showing that the non-moving party has violated the Court's order, the non-moving party bears the burden of showing that compliance is impossible; he or she is "obliged to make this showing 'categorically and in (continued...)

After noting that "civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"[15] and that incarceration until compliance with a prior order is "a distinctive sanction" for civil contempt as long as "the order requires performance of an identifiable act,"[16] the Court found that the continued contemptuous behavior of both Edmond and Williams warranted incarceration until such time as they have disgorged all tax fees received since January 15, 2016.[17]

To avoid that drastic step, the Court allowed Edmond and Williams one final opportunity before incarceration to (1) pay the full amount of funds under their control, including assets belonging to the business or purchased with funds from the business that can be sold; (2) produce a full and complete accounting to expose their prior hidden activities; and (3) provide a plan to sell the assets purchased with the funds that subject to disgorgement as requested by the United States in its response.[18] The Court directed the United States to set a date, time, and location for Edmond and Williams to appear at a deposition to give sworn testimony concerning all transactions related to the fees that are subject to be disgorged, including all expenditures

---

(… continued)

detail.'" *United States v. Conces*, 507 F.3d 1028, 1043 (6th Cir. 2007); *United States v. Rylander*, 460 U.S. 752, 757 (1983).

[15] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

[16] *Id.* at 840-41.

[17] (Order 6/27/2016, Conclusion No. 8, ECF No. 64.)

[18] (*Id.*)

involving those fees.[19]  The United States was further directed to notify the Court if Edmond or Williams failed to appear at the deposition or testify truthfully, so that an arrest warrant for that individual could be issued and that individual would remain incarcerated until he or she complied with the April 4, 2016, order, and purged him or herself of the contempt.[20]

On July 11, 2016, the United States filed a notice that Edmond and Williams had both appeared at the court-ordered deposition.[21]  According to the United States, Williams' answers were "evasive and untruthful" in that "[he] testified that he was destitute yet had sufficient funds to gamble, and he refused to provide an explanation of what happened to the funds he transferred from the Tax Firms' bank account to his daughter."[22]  The United States also asserts that Edmond's testimony "leaves no doubt that she assisted in hiding assets and enjoyed the benefits of the parties' earlier violations of this Court's injunctions and orders."[23]  The United States asks that a purge amount of $50,000 be set and that Edmond and Williams be incarcerated until such time as that amount has been paid.

Edmond has filed a response to the United States' notice on behalf of herself and Williams.[24]  She states that, prior to the filing of her response, she provided the United States with additional cashier's checks for dates in February 2016 showing payments to individuals for

---

[19]  (*Id.* at Conclusion No. 10.)

[20]  (*Id.* at Conclusion No. 11.)

[21]  (Notice, ECF No. 65.)

[22]  (*Id.* at p. 1.)

[23]  (*Id.*)

[24]  (Resp., ECF No. 68.)

professional services rendered on behalf of the Tax Frim and a mortgage statement from Bank of America showing that she is in arrearages on her residential mortgage in the amount of $8,464.93.[25] She contends that she cannot explain the withdrawals of the approximately $150,000 from the Tax Firm's bank accounts because she is not an authorized user of those accounts and is depended on information from Williams. She notes that Williams testified at the deposition that "Stephanie didn't have anything to do with anything. Anything that happened with the Tax Firm, it's all on me, Kevin Williams."[26]

Edmond states that she has tried to get her daughter, Danishia Deadmin, to provide an accounting of the $33,040 that she received from the Tax Firm, but the only information provided by Deadmin is that the money was spent on personal living expenses and "in support of other family members living outside the household."[27]

Edmond maintains that records from her bank account show that she does not have any funds to pay a purge amount, and she points to her mortgage arrears and the liens on the personal vehicles of her and Williams. She states that "the Porsche Panamera belongs to Danishia Deadmin and the Lexus ES 350 belongs to Mary Edmond,"[28] presumably to show that she has no control over these assets. Additionally, she points out that, if she and Williams are both incarcerated, their young twin sons will be left without a caregiver. She suggests that the Court

---

[25] (*Id.* at p. 2.)

[26] (*Id.* (citing Notice, Williams Dep.. Ex. 102, p. 87, ECF No. 65-2.))

[27] (*Id.* at pp. 3 – 4.)

[28] (*Id.* at p. 4.)

set a payment plan in the amount of no less than $500 per month payable to the United States Treasury to begin after sixty to ninety days to allow her and Williams to find work.[29]

Based on the information submitted by the United States, the Court sets $50,000 as the amount necessary for Edmond and Williams to pay to purge the current contempt.[30] Because the Court makes different findings as to the culpability and ability to pay of Edmond and Williams, the Court **ORDERS** $25,000 as the purge amount for Edmond and $25,000 as the purge amount for Williams.

<u>Stephanie Edmond</u>

After reviewing the deposition testimony of Williams and Edmond and Edmond's prior testimony at the various hearings in this matter, the Court concludes that, while Edmond was culpable in allowing the Tax Firm to operate as the successor to the Tax Factory and the Court's previous findings that she is in contempt of Court and incarceration is warranted are still in effect, Defendant Edmond cannot comply with the order of April 4, 2016, at this time because of her lack of financial resources. At her deposition, Edmond testified that she had cash assets of only $14 and she was planning to go on food stamps.[31] As discussed previously, the mortgage on her house is in arrears. Moreover, Edmond is the caregiver for her twin toddlers. If she and Williams are both incarcerated, their sons will be without a caregiver.

---

[29] (*Id.* at p. 7.)

[30] The United States arrived at this figure based on Williams' testimony that he knew of the Court's order no later than April 18, 2016, and on that date the Tax Firm's bank account had a balance of approximately $50,000. (Notice, p. 9, ECF No. 65.) The amount to be disgorged is still $260,000. The $50,000 amount is merely to purge the contempt.

[31] (*Id.* (citing Edmond Dep., Exh 103, p. 18.))

Also factoring into the Court's decision is the testimony of Williams that the expenditure of the funds to be disgorged was "all on him." While Edmond bears responsibility for her own actions and has not been totally forthcoming with information, she did not have access to the Tax Firm's bank accounts, and, thus, Williams bears the brunt of the responsibility in failing to account for and spending the monies that were subject to the disgorgement order.

Accordingly, the Court **ORDERS** that Stephanie Edmond obtain gainful employment within ninety (90) days from the entry of this order and that she make a payment of $500 on or before the end of the ninety day period and a $500 payment each month thereafter until her purge amount is paid in full. If Edmond misses a payment or is late by more than three (3) days, upon notice to the Court by the United States, the Court will issue an arrest warrant for her, and she will be incarcerated until the balance of her $25,000 purge amount is paid.

<u>Kevin Williams</u>

The Court finds that incarceration for Kevin Williams is the appropriate sanction for his civil contempt. As noted above, he has accepted responsibility for the expenditure of the monies to be disgorged. Despite his plea of poverty, he testified that:

On February 27, 2016, he withdrew almost $5,000 as a down payment on a Lexus ES 350 for his mother-in-law. He valued the car as being worth $15,000, yet classified this car as "nothing lavish."[32] Williams and his family own at least six vehicles: Porsche Panamera, a Lexus GS 350, a Lexus ES 330, a Cadillac Escalade, a Mercedes-Benz, and a vintage Oldsmobile Cutlass.[33]

---

[32] (*Id.* (citing Williams Dep., Exh 102, pp. 44-45.))

[33] (*Id.*, Edmond Dep., Ex. 103, pp. 19-20.)

In late March, he purchased a new bedroom set for $3,690 and new linens for $888 and took his children to Branson, Missouri, for a vacation.[34]

He gambled "several times" in May and June 2016, after the entry of this Court's order to disgorge proceeds.[35]

Based on this testimony, the Court finds that Williams has not "categorically and in detail" met his burden of showing that compliance with the disgorgement order is impossible.[36] He has failed to produce credible evidence establishing a present inability to comply with the civil contempt order.

Moreover, despite the disgorgement order, Williams continued to pay tax return preparers, including his stepdaughter, Danishia Deadmin. A check on the Tax Firm account was written on May 10, 2016, to Deadmin for $33,040.[37] Williams testified this payment "emptied out the account[,]" but he has not provided bank statements to substantiate that claim.[38] The issuing bank verified that the cashier's check for $33,040 was presented on May 16, 2016, which was after the United States filed its Third Motion for an Order to Show Cause and on the same day the Court set the hearing on that motion. The Court does not credit Williams' testimony that

---

[34] (*Id.*, Williams Dep., Ex. 102, pp. 59, 62.)

[35] (*Id.* at pp. 53-54, 84.)

[36] *Conces*, 507 F.3d at 1043; *Rylander*, 460 U.S. at 757 (finding that a civil contemnor may be incarcerated until he either complies with the court's order or adduces evidence as to his inability to comply with that order.)

[37] (Notice, Williams Dep.. Ex. 102, p. 78, ECF No. 65-2.)

[38] (*Id.*)

he had been holding Deadmin's salary over the course of several months because she had a drug-addiction issue.[39]

The Court finds that Williams was in complete control of the Tax Firms bank accounts during the relevant time period, and he has failed to provide a sufficient explanation or documentation for the expenditures that were made from the funds that were to be disgorged. At this juncture, incarceration is the Court's only option to ensure Williams' compliance with the previous orders.

Incarceration is a well-established sanction for civil contempt. However, in the civil context, incarceration must be conditional; that is, once the contemnor performs the act required by the Court, he must be released. [40] The Supreme Court noted in *Hicks* that "[t]he critical feature that determines whether the remedy is civil or criminal in nature is not when or whether the contemnor is physically required to set foot in a jail but whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order."[41]

---

[39] (*Id.*)

[40] *See e.g., Hicks v. Feiock*, 485 U.S. 624, 632 (1988) ("If the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order, and is punitive if the sentence is limited to imprisonment for a definite period."); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (When "contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance."); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911) ("If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order.")

[41] 485 U.S. at 635 n. 7.

The Court finds that incarceration of Kevin Williams is a necessary and adequate civil contempt remedy to coerce his compliance with the disgorgement order. No lesser sanction than coercive incarceration would be effective to secure compliance, and the Court has previously warned Williams that he is subject to incarceration.[42]

The Clerk of the Court is **DIRECTED** to issue an arrest warrant for Kevin Williams and deliver to the United States Marshal Service.[43] Williams will remain coercively incarcerated until he has purged himself of civil contempt by paying the amount of $25,000 to the United States Treasury.[44]

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 21, 2016.

---

[42] (Order 4/4/2016, p. 12, ECF No. 51 ("Failure to comply with this order or the prior injunctions issued in this matter may result in further sanctions, including but not limited, to incarceration to coerce compliance and/or compensate the United States for the damage caused by the contemptuous conduct."); Order 6/27/2016, p. 11, ECF No. 64 ("If either Edmond or Williams fail to appear at the deposition or testify truthfully, an arrest warrant will be issued for that individual and that individual will be incarcerated until such time as the contempt has been purged.")).

[43] Williams has previously been found at his home address is 9788 Woodland Spruce Drive, Cordovo, Tennessee, and the former location of the Tax Firm which is 2828 Coleman Road, Memphis, Tennessee.

[44] *See Gompers*, 221 U.S. at 442 (explaining that an imprisoned civil contemnor "carries the keys of his prison in his own pocket").