IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-cv-02938-STA-tmp |
| | ) | |
| STEPHANIE EDMOND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION TO STRIKE ORDERS OF CONTEMPT,
GRANTING CROSS-MOTION TO REIMPOSE CONTEMPT SANCTIONS,
AND GRANTING MOTION TO COMPEL TURNING OVER OF FUNDS**

This matter began on December 3, 2013, when the United States filed a complaint against Defendants Stephanie Edmond and Tax Factory Enterprise, Inc. ("Tax Factory"), to enjoin them from operating a tax return preparation business. Before the Court are the motion of the United States to compel Kevin Williams to turn over recently discovered funds (ECF No. 74), the motion to strike orders of contempt filed by Kevin Williams (ECF No. 97), and the cross-motion of the United States to reimpose contempt sanctions (ECF No. 98.) A recitation of the procedural history of the case is in order before the Court addresses the pending motions.

On April 17, 2015, the Court entered an "Order and Judgment of Permanent Injunction" upon consent motion of the parties. (ECF No. 24.)

On July 16, 2015, on motion of the United States (ECF No. 27), the Court ordered Defendants to show cause why they should not be held in contempt for failing to comply with the terms of the permanent injunction. (ECF No. 28.)

On August 7, 2015, the Court vacated the order to show cause at the request of the United States based on the compliance of Defendants with the April 17, 2015, order. (ECF No. 34.)

1

On December 31, 2015, the United States filed a second motion for order to show cause (ECF No. 35), contending that, again, Defendants were not in compliance with the permanent injunction. At a hearing held on January 15, 2016, the Court granted the United States' second motion to show cause and enjoined Defendants, as well as their agents, servants, employees, independent contractors, and all persons in active concert or participation with them, from preparing any federal tax returns until further orders of the Court. (ECF Nos. 39, 40.)

On March 18, 2016, at the request of Defendants' new counsel, the Court held an evidentiary hearing on the United States' second motion to show cause. (ECF No. 45.) At the conclusion of the hearing, the Court determined that the injunction from January 15, 2016, should remain in effect until the Court issued a written order and ordered Defendant Edmond to display a copy of the injunction at her place of business. (*Id.*)

On April 4, 2016, the Court entered Findings of Fact and Conclusions of Law. (ECF No. 51.) The Court found the following facts concerning Movant Kevin Williams:

> Williams, the husband of Defendant Stephanie Edmond, is also a tax return preparer. Defendant Tax Factory is a corporation formed under the laws of the State of Nevada. Edmond is the corporation's vice president. Williams is the corporation's president. The Tax Factory's address is 2826 Coleman Road, Memphis, Tennessee.
>
> The permanent injunction entered on April 17, 2015, *inter alia*, prohibited Defendants Edmond and the Tax Factory, as well as their "agents, servants, employees independent contractors, . . . and all persons in active concert or participation with them," from engaging in conduct that would interfere with tax administration, including (but not limited to) preparing false returns, claiming improper deductions or credits, or otherwise engaging in conduct that could result in tax penalties.
>
> Shortly after December 1, 2015, Williams contacted Marcus Lane, a college friend, for help in creating a new tax return preparation entity. Williams arranged to use the Electronic Filing Identification Number ("EFIN") that Lane had obtained for his own company for a fee. Other than providing an EFIN, Lane had no role with the new entity and did not consent to have any other role with the

new entity. Williams had sufficient time to obtain his own EFIN prior to the start of the new tax season without using Lane's services.

The application for the new tax return preparation entity, the "Tax Firm," lists Marcus Lane as the primary contact, principal, and responsible official for the Tax Firm. Neither Edmond nor Williams are listed on the application, although Williams should have been listed on the application rather than Lane. The physical address of the Tax Firm is listed as 2828 Coleman Road, Memphis, Tennessee.

Although Edmond testified that the 2828 Coleman Road address is next door to 2826 Coleman Road and that the two addresses are completely separate, Revenue Officer Renesha Turnage conducted a field visit and observed that the two adjacent offices are combined into one large office space. The address at 2828 Coleman Road has an arrow sign that states "use other door" and points to 2826 Coleman Road, i.e., the address of the enjoined Tax Factory.

There is no evidence in the record to show the incorporation of any corporation or company known as the Tax Firm in the State of Tennessee or elsewhere. Out of the thirteen tax return preparers at the Tax Firm, ten had worked for Defendants in the calendar year 2015. Ninety per cent of the income tax returns that had been filed by the Tax Firm were prepared by former employees of and/or independent contractors associated with Defendants.

There is no evidence of any sale agreements for the assets of the Tax Factory, any evidence of an assumption of any leases or real property, or any other evidence to show that the Tax Firm is anything more than a successor and continuation of the Tax Factory. Instead, the evidence shows that Williams, the president of the Tax Factory, is the owner of the Tax Firm. The Tax Firm shares the same address as the Tax Factory and carries on the same business purpose of preparing federal tax returns. And, the Tax Firm retained substantially the same workers as its predecessor. Accordingly, the Court finds that the Tax Firm is the successor of the Tax Factory.

(Findings Nos. 2-4, 10-15, 17, ECF No. 51.)

The Court then concluded that the permanent injunction was definite and specific and that Defendants' actions violated the permanent injunction. The Court also found that the second injunction was definite and specific and bound Defendants as well as their agents, servants, employees, independent contractors, and all persons in active concert or participation from preparing federal tax returns. (Conclusions Nos. 3, 5, ECF No. 51.)

As related to Movant Williams, the Court concluded as follows:

Defendants and its successor, the Tax Firm, are in violation of the second injunction, and they are in contempt of this Court. There is no evidence that the Tax Firm was created for any reason except to escape the review of the monitor and the injunctions issued by this Court. There is no evidence to show a legitimate separate entity. Instead, the evidence demonstrates that Tax Firm was created for the improper purpose of flouting the Court's orders.

As a successor to Defendants, the Tax Firm had actual notice of the injunction. Moreover, Williams was the president of the Tax Factory, and he engaged in repeated subterfuge designed to escape detection by the IRS, allowing the inference that he possessed actual notice of the order.

Based on this finding of contempt, Defendants, including their successor Tax Firm and its owner, Kevin Williams, are enjoined from preparing tax returns as of January 15, 2016. Notice of the order entered today shall be provided by Defendant Edmond to Williams, the Tax Firm, and all persons performing services at the location of 2826 and 2828 Coleman Road, Memphis, Tennessee. In addition, a copy of this order shall be posted on the front doors at 2826 and 2828 Coleman Road to protect both the public and the United States.

Additionally, Defendants, including the successor Tax Firm and its owner, Kevin Williams, are ordered to disgorge all fees collected for the preparation of returns at 2826 and/or 2828 Coleman Road, Memphis, Tennessee, or using the EFIN held by the Tax Firm or any further successors from January 15, 2016, and forward, to the United States. Defendants may not reduce the fees to be disgorged on account of the payment to Marcus Lane or any other person for the purpose of obtaining an EFIN or otherwise operating a return preparation business.

Defendants are also ordered to provide bank statements, as set out below, to the United States to allow it to verify that all fees have been disgorged and to verify whether other returns were prepared or other entities created in an effort to further evade this Court's injunctive orders.

(Conclusions Nos. 6-10, ECF No. 51.)

The Court then ordered:

Defendant Stephanie Edmond shall file a notice with this Court confirming her delivery of this order to all non-parties as described in the preceding paragraph, within five (5) business days of the entry of this order;

Within seven (7) business days of the entry of this order, Defendants shall provide to the United States copies of all bank statements where Defendants, the Tax

> Firm, and Kevin Williams hold a beneficial interest for the period from June 30, 2015, to the present;
>
> Within seven (7) business days of the entry of this order, Defendants shall provide a statement of each and all returns prepared since January 15, 2016, and the fee that was charged for the preparation of each return;
>
> Defendants shall disgorge all fees collected since January 15, 2016, by sending a check made payable to the "United States Treasury" to the following address: US Department of Justice, Tax Division, PO Box 310, Washington, DC 20044 within fourteen (14) days of the entry of this order;
>
> Failure to comply with this order or the prior injunctions issued in this matter may result in further sanctions, including but not limited, to incarceration to coerce compliance and/or compensate the United States for the damage caused by the contemptuous conduct.

(Findings/Conclusions, p. 12, ECF No. 51.)

On April 25, 2016, Defendant Edmond certified in a sealed notice that she had complied with the Court's order by giving the requisite notice to Movant Williams and by posting a copy of the order as required by the Court. (ECF No. 53.)

On May 13, 2016, the United States filed its third motion to show cause on the ground that Defendants had not disgorged all fees as ordered by the Court. (ECF No. 54.) A hearing on the motion was held on June 1, 2016, and the matter was taken under advisement. (ECF No. 56.)

On June 27, 2016, after additional briefing, the Court granted the third motion to show cause and entered an order of civil contempt against Defendants Stephanie Edmond and Tax Factory and against Kevin Williams as an officer of Defendant Tax Factory and as a person "in active concert or participation" with Defendants who had actual notice of the Court's prior orders. (ECF No. 64.)[1]

---

[1] The Court specifically found that "Kevin Williams, although not a party to the action, is bound by the order of April 4, 2016, by its express terms and by Federal Rule of Civil Procedure
(continued...)

On July 11, 2016, the United States asked the Court to issue arrest warrants for Defendant Edmond and Movant Williams based on their deposition testimony which allegedly showed that Edmond and Williams had "hid[den] assets and enjoyed the benefits of the parties' earlier violations of this Court's injunctions and orders."[2] (ECF No. 65.)

On July 21, 2016, the Court ordered a $25,000 purge amount for Edmond and a $25,000 purge amount for Williams.[3] (ECF No. 69.) Defendant Edmond was ordered to obtain gainful employment within ninety days from the entry of the order and make a payment of $500 on or before the end of the ninety day period and a $500 payment each month thereafter until her purge amount was paid in full. The Court further ordered that, if Edmond missed a payment or was late by more than three days, upon notice to the Court by the United States, the Court would issue an arrest warrant for her, and she would be incarcerated until the balance of her $25,000

---

(… continued)
65(d)(2) which states that a parties' officer who has received actual notice of an injunction is bound by that injunction." (Order, p. 8, ECF No. 64.)

[2] To avoid incarceration, the Court had given Edmond and Williams the opportunity to (1) pay the full amount of funds under their control; (2) produce a full and complete accounting to expose their prior hidden activities; and (3) provide a plan to sell the assets purchased with the funds that are subject to disgorgement as requested by the United States in its response. (Conclusion No. 8, ECF No. 64.) The Court directed the United States to depose Edmond and Williams concerning all transactions related to the fees that are subject to be disgorged, including all expenditures involving those fees. The United States was further directed to notify the Court if Edmond or Williams failed to appear at the deposition or testify truthfully, so that an arrest warrant for that individual could be issued and that individual would remain incarcerated until he or she complied with the April 4, 2016, order, and purged him or herself of the contempt. (*Id.* at Conclusion Nos. 10, 11.)

[3] This figure was arrived at based on Williams' testimony that he knew of the Court's order no later than April 18, 2016, and on that date the Tax Firm's bank account had a balance of approximately $50,000. (Order, p. 9 n. 30 (citing Notice, p. 9, ECF No. 65), ECF No. 69.) The amount to be disgorged remained at $260,000, while the $50,000 amount was merely to purge the contempt.

purge amount is paid. (*Id.* at p. 10.) The Court found that incarceration was the appropriate sanction for Movant Williams and directed the Clerk of the Court to issue an arrest warrant. (*Id.* at pp. 11-13.) Williams was to remain incarcerated until he purged himself of the contempt by paying $25,000 to the United States Treasury.[4] (*Id.* at p. 13.)

On July 27, 2016, the United States filed a motion to compel Williams to turn over recently discovered funds.[5] (ECF No. 74.) The United States sought to have Williams turn over to the United States or to the Court an additional $49,160 of income that he purportedly failed to disclose. On August 1, 2016, Attorney Howard Brett Manis made an appearance of behalf of Kevin Williams. (ECF No. 78.) After a hearing on August 5, 2016, Williams was released from custody after $25,000 of the $49,160 amount was applied toward the purge amount, the Clerk of the Court was directed to hold the remaining $24,160 until further orders of the Court, and the Court allowed further briefing from the parties. (ECF Nos. 86, 87.)

On September 29, 2016, Williams filed a motion to strike the orders of contempt as they pertain to him. (ECF No. 97.) The United States has filed a response to the motion to strike and a cross-motion to reimpose contempt sanctions. (ECF No. 98.)

## Motion to Strike Orders of Contempt

Movant Williams contends that the orders of contempt pertaining to him should be set aside on the following grounds: (1) He is not a defendant in this matter, and there are no allegations in the complaint that he prepared or facilitated the preparation of false and fraudulent

---

[4] On July 26, 2016, the Court denied Williams' motion to stay the arrest warrant. (ECF No. 73.) Williams turned himself into the Marshal's Office on August 3, 2016.

[5] This motion remains pending.

income tax returns; (2) he was not served with process, was not represented by Defendant Edmond's attorney(s), and did not assist in the preparation of the answer or otherwise in the defense of the complaint; (3) Edmond's attorneys who negotiated the terms of the original permanent injunction with the United States did not represent him and did not solicit his input, and he did not receive actual notice of the permanent injunction or the judgment; (4) he was not named in the July 15, 2015, motion for entry of order to show cause filed by the United States, he did not receive actual notice of this motion, and the allegations in the motion pertain entirely to Edmond; (5) the allegations in the motion to show cause filed on December 31, 2015, were directed at Edmond's conduct and not at the conduct of Williams, he was not named in this motion, and he did not receive actual notice of the motion; (6) he was not served with notice of the hearing set for January 15, 2016, and he did not participate in that hearing; (7) Williams was not named in the January 26, 2016, order granting motion for order to show cause, and he did not receive actual notice of it although the order enjoined Defendants, as well as their agents, servants, employees, independent contractors and all persons in active concert or participation with them from preparing federal tax returns; (8) Edmond's new counsel, Jeff C. Woods, entered an appearance on February 15, 2016, and made clear that he only represented Edmond, and Woods did not serve on Williams a copy of the response to the second motion to show cause filed on behalf of Edmond; (9) Williams was not served with notice of the hearing on March 18, 2016, and did not receive actual notice of it; (10) at the March 18 hearing, for the first time, specific allegations of wrong doing were directed against Williams by the United States and the Court's April 4, 2016, findings of fact and conclusions of law for the first time specifically addressed the conduct of Williams and determined that the Tax Firm, owned by Williams, was a successor of Defendant Tax Factory and found that Williams had actual notice of the injunction

because the Tax Firm was a successor of the Tax Factory; (11) the Court also found Williams in contempt and ordered him and the Tax Firm to stop preparing tax returns and disgorge all fees collected from the preparation of tax returns at 2826 and/or 2828 Coleman Road, Memphis, Tennessee, or using the EFIN held by the Tax Firm or any further successor from January 15, 2016, and forward, to the United States, which Williams contends was a taking of his property without due process; Defendant Edmond was ordered to provide notice of the order to Williams and the Tax Firm, although there is no record of such;[6] (12) the United States did not serve its third motion to show cause, filed on May 13, 2016, on Williams, and he did not have actual notice of the motion nor did he have actual notice of the hearing set for June 1, 2016; (13) the June 10, 2016, order requiring additional information from the parties was not served on Williams and neither did he have actual notice of the order; (14) the response filed by the United States was not served on Williams nor was he provided with actual notice of it even though the United States asked that Williams be incarcerated; neither was Williams served with the response filed by Edmond nor did he have actual notice of it; (15) after a deposition at which Williams appeared, the United States filed a notice regarding third order of contempt but did not serve this document on Williams even though the United States relied on portions of the deposition to seek contempt penalties against Williams; (16) the United States did not attempt to serve any pleading on Williams until July 27, 2016, when it filed its motion to require Williams to turn over recently discovered funds; (17) Williams was not represented by counsel until

---

[6] Defendant Edmond submitted to the Court a notice that she provided a copy of the April 4, 2016, order to Williams and that he posted a copy of the order at the 2826 and 2828 Coleman addresses. (Sealed Notice, ECF No. 53.) While Williams' attorney may not have had access to the sealed notice, any attempt by Williams to deny that he received a copy of the order from Edmond is not credible.

August 1, 2016, and did not have an opportunity to present evidence or be heard until that date. (Mot., ECF No. 97.)

Williams argues that he was not lawfully bound by the injunctions entered in this matter (ECF Nos, 24, 40, 51, 64, 69, 76, 80) because he was not a named defendant in this lawsuit and his role as an officer of the Tax Factory, a named defendant, ceased to exist upon its dissolution in November 2014. He also argues that, even if he is lawfully bound by those injunctions, he did not have sufficient notice and/or knowledge of the injunctions and an opportunity to be heard prior to the Court finding him to be in contempt.

Is Williams bound by the injunctions?

The permanent injunction entered on April 17, 2015, prohibited Defendants Edmond and the Tax Factory, as well as their "agents, servants, employees independent contractors, . . . and all persons in active concern or participation with them," from engaging in conduct that would interfere with tax administration, including (but not limited to) preparing false returns, claiming improper deductions or credits, or otherwise engaging in conduct that could result in tax penalties. (Perm. Inj., ECF No. 24.) The order of January 26, 2016, also enjoined Defendants, as well as their agents, servants, employees, independent contractors, and all persons in active concert or participation with them, from preparing any federal tax returns until further orders of the Court. (Second Inj., ECF No. 40.) The Court has already found that Williams was bound by those injunctions as president of Defendant Tax Factory and as the owner of the Tax Firm, which

was the successor to the Tax Factory (Findings/Conclusions, ECF No. 51) and sees no reason to visit that finding.[7]

Although Williams points out that the corporate entity known as the Tax Factory ceased to exist as a legally recognized party on November 30, 2014, when its Nevada corporate charter was revoked and reasons that his liability as president of the Tax Factory also ended on that date, the right to transact business that is forfeited on charter revocation does not normally include the entity's capacity to sue and be sued.[8] Moreover, as noted by the United States, Defendant Tax Factory and its tax return preparers, including Kevin Williams, continued to file tax returns throughout the 2015 calendar year despite the revocation of the corporate charter (Summ. of Returns Prepared in 2015 and 2016, ECF No. 98-4), thus indicating that Williams continued to be involved with the Tax Factory after the revocation.

Williams has presented no credible evidence to show that the Court's determination that (1) the Tax Firm was created for the sole purpose of escaping both the review of the monitor and the injunctions issued by the Court, (2) the Tax Firm was not a legitimate separate entity, and (3) the Tax Firm was created for the improper purpose of flouting the Court's orders and, thus, was a successor to Defendant Tax Factory, was in error. Williams complains that he was not given an

---

[7] The Order of April 4, 2016, found Williams to be in contempt of the second injunction. (Findings/Conclusions, p. 9, ECF No. 51.)

[8] *See AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 585, 245 P.3d 1190, 1195 (2010). *See also* Nev. Rev. Stat. § 78.585 (setting forth the statutory limitations for commencing a cause of action against a dissolved corporation for claims arising before its dissolution and providing that a lawsuit against a dissolved corporation for claims that were discovered or should have been discovered before the corporation's dissolution must be commenced within two years after its date of dissolution).

opportunity to present evidence to refute these findings. However, he has not brought any evidence to the Court's attention in his present motion that would convince the Court to change its mind about these findings. The unrefuted evidence shows that: (1) the Tax Factory and the Tax Firm used the same facility, (2) Williams was involved with both the Tax Factory, as president, and the Tax Firm, as its sole proprietor, and (3) the returns of the Tax Firm were prepared for the most part by former Tax Factory employees. As stated in the Findings of Fact, there is no evidence in the record of any sales agreement or any evidence of an assumption of any leases or real property, or any other evidence to show that the Tax Firm is anything more than a successor of the Tax Factory. (Findings/Conclusions, ECF No. 51.) Accordingly, the Court declines to set aside its finding that Williams was bound by the injunctions issued in this case.

Did Williams have actual notice of the injunction(s)?

Under Fed. R. Civ. P. 65(d)(2), an injunction binds the parties, its officers, and any persons "who are in active concert or participation" with the parties if the persons receive "actual notice" of the injunction "by personal service or otherwise." The Court previously found that, as a successor to Defendant Tax Factory, the Tax Firm and its owner, Kevin Williams, had actual notice of the injunctions. Additionally, Williams was the president of the Tax Factory, and he engaged in subterfuge, such as setting up the Tax Firm, allowing the inference that he possessed actual notice of the injunctions. (Findings/Conclusions, ECF No. 51.)

Although in his motion to set aside, Williams argues that he had no actual notice of the injunctions, he has presented no evidence of such. In fact, his affidavit attached to the motion contains no averment or testimony that he had no actual knowledge of the injunctions, which

leads to an inference that, although Williams is willing to argue that he had no actual knowledge, he is not willing to swear to this before the Court. (Williams Affidavit, ECF No. 97-9.)

It is undisputed that Williams was the president of Defendant Tax Factory and was (and is) married to Defendant Edmond. They live together and have children together. Money earned from both the Tax Factory and the Tax Firm has been used to support Defendant Edmond and her children. The Tax Factory and the Tax Firm were located in the same duplex, and a sign from the Tax Factory pointed to the entrance of the Tax Firm. Moreover, Williams has provided Edmond with documentation as to his purported income and expenditures during the pendency of the litigation. It is not credible that Williams never made any inquiries to Edmond as to why she needed this information.[9]

Additionally, the fact that the Tax Firm, a sole proprietorship owned by Williams, was the successor of the corporation the Tax Factory, was sufficient to put the Tax Firm and Williams on actual notice of the injunctions. Because the Tax Factory had notice of the injunctions, its successor is deemed to also have notice.[10]

---

[9] *See F.T.C. v. Vocational Guides, Inc.*, 2006 WL 3254517 at *10 (M.D. Tenn. Nov. 9, 2006) (finding that the defendant's wife "had ample reasons and opportunities to examine the Permanent Injunction, although she denies she ever did" and "[h]er denial [was] self-serving and not credible, especially in light of the suspicious circumstances" under which she agreed to become president of a later non-defendant company controlled by her husband). *See also Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 800 (N.D. Ohio 2005) ("[a]lthough the [respondents] may not have seen or read the Consent Decree, they certainly knew about it and its prohibition. . . . Overwhelming circumstantial evidence shows that they could not possibly have been ignorant of it."); *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985) (noting that, from the evidence, it was clear the contemnor had knowledge of the order).

[10] *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) (injunctions also bind "successors and assigns who operate as 'merely a disguised continuance of the old employer' ... whether [the business was transferred] as a means of evading the judgment or for other reasons" (citations omitted)); *Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996) (finding successor (continued...)

For these reasons, the Court finds by clear and convincing evidence that Williams had actual notice of the injunctions and, thus, was bound by them. Accordingly, his motion to strike the orders of contempt is **DENIED**.

Motion to Compel Turning Over Funds and Cross-Motion to Reimpose Sanctions

Movant Williams has shown no reason for the $24,160 amount being held by the Clerk of the Court not to be turned over to the United States Treasury to be applied against the disgorgement debt owed by Defendants and Williams. Therefore, the motion to compel turning over funds filed by the United States is **GRANTED**. The Clerk of the Court is **DIRECTED** to send a check in the amount of $24,160 plus any accrued interest to the United States Treasury at the United States Department of Justice-Tax Division, PO Box 310, Washington, DC 20044. The United States is **DIRECTED** to apply this amount to the disgorgement debt owed by Defendants and Williams.

The United States has asked the Court to reimpose sanctions on Williams and order him to pay $1000 per month to the United States until the debt is satisfied. As grounds, the United States has presented unrefuted evidence that, subsequent to the August 5, 2016, order granting Williams thirty days to brief the Court on his argument that the injunctions do not apply to him, Williams paid $237 to Direct TV, $235 to AT&T, $237 to Direct TV, $400 to Comcast, $337 to AT&T, $37 to FedEx to ship an unknown package, and $400 to Sprint Wireless, and he withdrew $720 withdrawn in a single day from three different ATMs. (Williams' Exhibit, ECF

---

(… continued)
organization bound by injunction because its leadership, goals and activities were identical to enjoined predecessor); *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) ("The law does not permit the instigator of contemptuous conduct to absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others.").

No. 97-4.) Moreover, Williams repaid a $5000 undocumented loan to Pastor Steven Young. (*Id.*). The Court agrees with the statement of the United States that "Williams' repeated efforts to spend on excesses to frustrate collection under this Court's disgorgement order even after this Court's express admonishment to the contrary should not be condoned." (United States Resp., p. 12, ECF No. 98.)

Although Williams claims to suffer from Multicentric Reticulohistiocytosis which requires "multiple surgeries and medical treatment" that he cannot afford, he has presented no evidence of such. (Mot., p. 29, ECF No. 97.) And, even though Williams claims not to be able to afford to re-pay the United States because of his family financial obligations, his spending on non-essential items, as described above, belies his claim.

The motion to reimpose sanctions filed by the United States is **GRANTED**. Movant Williams is **ORDERED** to obtain gainful employment within sixty (60) days from the entry of the order and make a payment of $1000 on or before the end of the sixty day period and a $1000 payment each month thereafter until the disgorgement amount has been paid in full. If Williams misses a payment or is late by more than three days, upon notice to the Court by the United States, the Court will issue an arrest warrant for him, and he will remain incarcerated until a hearing can be held and a purge amount set.

Summary and Conclusion

The motion of the United States to compel Kevin Williams to turn over recently discovered funds (ECF No. 74) is **GRANTED**, and the Clerk of the Court is **DIRECTED** to remit the $24,100 amount plus interest currently being held by the Clerk to the United States Treasury. The United States is **DIRECTED** to apply these funds to the disgorgement amount previously set by the Court.

The motion to strike orders of contempt filed by Kevin Williams (ECF No. 97) is **DENIED**.

The cross-motion of the United States to reimpose contempt sanctions (ECF No. 98) is **GRANTED**. Williams will have sixty (60) days from the entry of the order to obtain employment and make a payment of $1000 and then a $1000 payment will be due each month thereafter until the disgorgement amount has been paid in full. Failure to make these payments will result in the incarceration of Williams.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 12, 2016.